The next case is Felder v. United States Tennis Association. Thank you. May it please the court, Rebecca Guthrie on behalf of the appellant Mr. Sean Felder in this appeal. We ask this court to reverse the Southern District's dismissal of Mr. Felder's claims against USTA for the following reasons. First, the district court erred in not A plaintiff can bring a Section 1981 claim against a party who interferes with an employment contract even if the interfering party is not the plaintiff's joint employer. Second, apart from the Section 1981 claim, Mr. Felder pled sufficient facts to allege that USDA was his joint employer for Title VII purposes, and the district court erred in dismissing his pro se retaliation and failure to hire claims at such an early stage. Lastly, we believe that Mr. Felder's complaint alleges sufficient facts to survive a motion to dismiss. If this court were to disagree, Mr. Felder should be allowed to replete his claim with the assistance of counsel. First, even if there were no joint employer relationship here, Mr. Felder's Section 1981 claim should have survived a motion to dismiss. A plaintiff can bring a Section 1981 claim against a party who interferes with an unemployment contract pursuant to discriminatory or retaliatory purposes, even if that party is not the plaintiff's joint employer. The district court never analyzed the Section 1981 claim outside of the employment context. The district court dismissed Mr. Felder's case based on his failure to establish a joint employer relationship and because Mr. Felder did not plead, he had applied to a job at the USDA, as summarized by the district court on page 187 of the joint appendix. Both of these are required under Title VII failure to hire cases, but not Section 1981. What is required under Section 1981 is a contractual relationship that the defendant's actions interfere with in a discriminatory or retaliatory way. The contract does not need to be between the plaintiff and the defendant, and here it is between Mr. Felder and ADA Security, and Mr. Felder has pled that USDA interfered with that contract in a discriminatory and retaliatory way. If USDA was not Mr. Felder's joint employer, as USDA argues here, then the court should not have completed the Section 1981 and Title VII analysis. If the district court's analysis were to stand, the purpose and effect of Section 1981 claims in questionable employment context would be diluted, if not completely eviscerated. Second, if Mr. Felder pled sufficient facts to allege, Mr. Felder did plead sufficient facts to allege that USDA retained control over who was able to enter his work site, and by denying Mr. Felder the access credentials, USDA vetoed ADA Security's hiring of him. This is a sufficient... Julie, does the complaint, Ms. Guthrie, can I ask, does the complaint really tell us that? I mean, do we know that, for instance, that he was deprived of employment by virtue of being denied credentials at the USDA, or was there other work at ADA Security that he continued to perform? Is that in the complaint? Your Honor, Mr. Felder did say that he was only hired to do the two weeks of seasonal employment at the U.S. Open. Okay, and we infer from that that if he can't do those two weeks, then he doesn't have employment any longer at ADA Security? That's correct, Your Honor. Is what you're saying that this was a temporary part-time job that he was applying for? He was open? Isn't that what the complaint said? Yes, Your Honor. He was a seasonal employee, and he had worked at the U.S. Open prior to this incident as well. If USDA's denial of Mr. Felder's access credentials is not sufficient to establish control under Clinton's ditch, then large companies like USDA could freely discriminate against employees by sorting out parts of the hiring process while ultimately maintaining control over who works for them. This cannot be the law. The Joint Employer Doctrine exists to prevent employers from doing justice and to hold these employers accountable for discriminatory and retaliatory decision-making. Third, there were sufficient facts said by Mr. Felder as a pro se litigant so that when construed, it shows that USDA had a discriminatory motivation in refusing to hire Mr. Felder because he was black. Mr. Felder pled the following facts. He had no history of a disciplinary write-up in the eight years that he worked at the U.S. Open prior to this incident. There was bad press that the USDA received based on the discrimination at the U.S. Open in the complaints that Mr. Felder previously filed against CSC. There's a history of discrimination at the USDA and that the USDA had knowledge of the offense that Mr. Felder complained about against CSC. All of these facts in their totality create an inference that USDA was motivated to deny Mr. Felder the access credentials because of his race. USDA did not just deny him the credentials because Mr. Felder sued one of its contractors. They denied the credentials because Mr. Felder was a black man who had raised the alarm about how black employees are treated at the U.S. Open in this lawsuit. Well, but Ms. Guthrie, isn't what you just stated a retaliation claim? Are you saying that they wouldn't have blackballed him, so to speak, if he were a white employee who had sued them for discrimination? No, Your Honor. We believe that the discrimination claim can be in addition to the retaliation. I understand. I understand that. But, you know, it seems to me the retaliation claim is much stronger, right? He's even got a statement from somebody at AJ who says this is why they refused to hire him is because of the lawsuit that he had filed. But he worked there himself on previous occasions. Isn't that right? That's correct, Your Honor. So they didn't refuse to hire him for all those years because of his race. That's correct, Your Honor. So we would note that because his complaint against CSC was about race discrimination at the U.S. Open, in addition to this being a retaliation claim, this is also not wanting essentially a loud black man who is willing to raise the alarm about discrimination and how he was being treated as an employee at the U.S. Open. In addition, Mr. Felder's claims against CSC raise questions about the culture that CSC had. And it is clear from the record that CSC still contracts with USDA. Okay. May I go back one step and ask another question about the joint employer factors? There are five of them. I take it that they're not exclusive and they're also not all necessarily applicable in every case. But I think, Sonny, it's interesting in this case, and I'm wondering what your thoughts are about it. As far as the only factor that is visible here is that the USDA apparently was able to dictate whether Mr. Felder was hired. Can we disregard the other four factors or would we have to look at or would he have to plead something about what would have if he had been hired as to some of those other factors? Or in a failure to hire case, is it enough that the alleged joint employer controlled the hiring? Your Honor, we believe that because this is a failure to hire claim and because this is so early in the pleading stage, that it is sufficient that Mr. Felder pled that USDA had the control to more facts will come to light that further establish USDA's control over Mr. Felder. So you're not necessarily saying that it's enough simply that a client of an independent contractor doesn't become an employer just because it asks for the removal of one of the independent contractor's employees? Or are you saying that is enough? Your Honor, we believe it's enough in a failure to hire claim. Otherwise, plaintiffs would not be able to plead facts because they're not allowed access to the worksite. So how can they know facts that go to discipline, records, and payroll? Who would have directly supervised them? So in a failure to hire claim, we do believe that the first factor should be given the most weight. It's the most important. Thank you. You've reserved some rebuttal time. Yes. Thank you, Your Honor. Thank you. We'll hear from Ms. Wilson. Good afternoon, Your Honor, and may it please the court. Mr. Felder's appeal should be dismissed in its entirety without leave for further amendment for the following reasons. One, Mr. Felder's employer claims in his Title VII and Section 1981 claims do not satisfy the pleading standards set forth in Trombley and its progeny. While this court must accept Mr. Felder's allegations, it's true and afford him more latitude as a pro se litigant, Mr. Felder is not exempt from complying with relevant rules of procedure and substance. Application of these legal principles to Mr. Felder's joint employer allegations compels dismissal because Mr. Felder fails to assert factual allegations that plausibly support the claim that the USDA exercised immediate control over Mr. Felder by application of a five-factor test. Specifically, Mr. Felder cannot marshal any facts that possibly support that, one, the USDA hired and fired him, directly administered any disciplinary procedure. Well, excuse me, Ms. Wilson, let's start with that first one. He works for a subcontractor, or he makes an application to a subcontractor, and they say, great, we like you, we hire you, you can go to work for the USTA at, I keep saying Forrest Hills, I'm an old man, at the US Open, but you have to go there to the USTA and get your credentials. He goes there, they refuse to give him credentials, this is his you filed a lawsuit against the contractor for USTA, and so they don't want you there. Now, can you explain to me what is missing with respect to the allegation that USTA controlled whether he would be hired? Sure. In this particular instance, the USTA controlled the aspect that it could remove Mr. Felder from this particular assignment. This is the only, according to the complaint, this is the assignment for which he applied. There was hiring being conducted for security guards for the US Open. He applied for that job, AJ gave it, and the USTA said you can't have it. So did they not control the hiring for this job? No, no, they did not, Your Honor. And I would refer the court to the case that we cited in a projectio, which is on point with respect to this particular matter. And in it, there is a distinction that is well respected and recognized in this circuit between a putative employer saying, look, you can't work on this assignment, and saying to the direct employer, hey, he can't work for you at all. There is nothing in the record that says or in any way implies that USTA said to AJ, security, look, you got to get rid of him. He can't work for you at any capacity. That's not what was said. What was said was, according to the facts that we must accept, is that he can't work for this assignment. So if USTA said to AJ, hire who you like for any job you want, but no black security guards at the US Open, they would be fully entitled to say that in your estimation, right? That is not what I'm saying. At least as far as Title VII is concerned, we'll get to 1981 in a moment, but at least as far as Title VII is concerned, they're not his employer, they're not making any decision about employment, and he would have no cause of action if that were what they said. Doesn't that follow from what you're saying? No, it doesn't, Your Honor, because here, and the cases are clear on there, there's a clear distinction between, for purposes of the hiring and firing component of this particular immediate control analysis, there's a distinction between saying you can't work on my I take your point. I asked you, does it not follow from that, that if USTA said, don't send us any black security guards, they would not be in violation of Title VII because they're not a joint employer? Isn't that what you are saying to me? So you're saying it's a well-established blah, blah, blah, but it is so well-established that if they said that, they would not be a joint employer, and they would not be liable under Title VII. Isn't that correct? I'm not, I think that particular sort of hypothetical is not our case, Your Honor. Well, wait, excuse me. First of all, that is your case, because at least that's what the plaintiff claims is true. But let's even assume that the complaint doesn't get you that claim of race discrimination, that that's not plausibly alleged. If it works for, if the argument you're making works for a retaliation claim, which I think is very clearly pled here, why wouldn't it work for any other Title VII claim? This is about whether they are an employer. They can do anything if they're not an employer without violating Title VII campaign. I don't, I can't answer that question in terms of whether they can do anything, Your Honor. Well, let's start with this. They can retaliate. They can say to AJ, if this is what they said, don't send us anyone who was a party to the lawsuit against us that alleged racial discrimination. That's exactly what's alleged here and is alleged quite explicitly in the complaint. You're saying they can do that because they are not his employer. They can do that without Title VII liability. Is that not what you are saying? That is not what I'm saying, Your Honor. I'm saying for purposes of, of this case, that there is a distinction to be drawn between USTA. But the, I'm asking you, what is the consequence of that distinction being drawn? And what you are asking us to say in this case is that there is no Title VII claim because USTA is not a joint participated in the race discrimination lawsuit. They did not say you don't hire anybody for any assignment at any place else that has no relation to the USTA who has participated in this lawsuit against us. So long as they are only, only saying don't send us anyone who complains about race discrimination, they are not in violation of Title VII. Is that not exactly what you are telling us? That is not what I'm saying, Your Honor. Well, tell me what you're saying. I, what I'm saying is in this particular set of facts, it is what, what is alleged is that Mr. Felder was, was told by the AJ security supervisor that, that USTA was through his, his credentials. And, and, and I'll get into the sort of what was said at the legion, but, and that as a result of the withdrawal of the credentials, he couldn't work at the U.S. Open facility. But there's nothing that says that he could not continue working for AJ security. Yes. And so long, excuse me. So exactly what you are saying is that as long as he could work for is entitled to say, you may not hire this man to work at our facility. If he complains about racial discrimination, that is exactly what you are saying. That's why we should dismiss this case, right? I respectfully disagree with the court characterization of my argument. I'm simply making the distinction that saying that you cannot work at a particular location is not saying that you can't work for the direct employer at all. Yes, I understand that. Okay. So, and the next question is, assume, let's assume that you're claim under section 1981, which specifically concerns interference with a right to contract. Well, the, the, in the section 1981 scenario, and I, and I disagree with the characterization that the district court bottoms or its conclusion or its decision on, on the fact that there was an absence of absence of a joint employer relationship, because that, that, that definitely wasn't the fact of the, of the district court's decision. In fact, the district court did look at the specifics of, of, of the 1981 claim without saying that first you have to show an employer employee relationship in, in section 1981 claim in which it is a, in this particular case, it is a failure to hire claims based on race and retaliation of the, the, Mr. Felder failed to show the actual quantity of the certain elements of that, that particular claim, which, which prevents him from going forward under, under the relevant tenets. For example, Mr. Felder must be able to show, in fact, that he, he applied and was denied the position, which he, which he hasn't been able to show, that he applied for a job at the USDA and that they denied it. In fact, the office crew was the employee of A.J. Security, which, which paid him in that particular job. And he has to show that he, he also under, he had an adverse employment action as a result of, of certain, certain steps, which again, relies on the argument that he was not relieved of all employment simply by USDA taking him off of that particular assignment. And he also has to show that there was some sort of causal connection between what he alleged were the reasons that he was taken off of that particular assignment and that it related to race. And what I did want to also bring up, because the court had raised it earlier, had to do with the retaliation claim, is that Mr. Felder gives actually like four reasons for why he was not given the, the assignment of, at the U.S. Open by the USDA. First, he says that the USDA retaliated against him due to an August 3, 2010 complaint that he filed against another contractor. He then says that USDA blackballed him due to a January 20, 2015 settlement against that same contractor. Third, he says the USDA didn't want Felder to return to the USDA because of a past bad press. And then lastly, he says that they didn't want him to work with their losses that had been filed in 2012, 2013. So when we look at those four reasons that Mr. Felder posits, none of those reasons can be viewed by the court. In fact, they have to be discharged because, number one, when he says he was retaliated, that's simply a legal conclusion which the court is clear cannot be considered. The next, he was blackballed due to a settlement. Again, a legal conclusion. The USDA didn't want him because of bad press. Again, speculative, and I don't, there's really no sort of indicia of any sort of race issue with respect to that that had occurred in 2012, 2013. Again, legal conclusions. And what, you know, and also the problem with these allegations is the timing of them. He's referring to a August 3, 2010 event. Excuse me, am I mistaken, am I mistaken that he alleges that he was told by AJ that they were specifically told that the reason was because he had participated in these lawsuits? That is what he alleges, that AJ told him that the reason that the assignment was withdrawn was because the USDA retaliated against him due to a 2010 lawsuit. So, he's alleging something that occurred six years prior to the withdrawal of the assignment was, you know, constituted the allegation and the complaint. And the theory is that the USDA called up the subcontractor and said, we don't want him here because of that lawsuit. We look at that lawsuit and that lawsuit is a race discrimination lawsuit. Doesn't that sound pretty plausibly to be about retaliation at that point? The race discrimination lawsuit was August 3, 2010. So, in looking at sort of the causal connection between the August 3, 2010 lawsuit and the 2016 withdrawal of the assignment, there was a time span, a six-year time span. But he's not relying on temporal proximity to draw an inference of retaliatory intent. He's saying that at least by hearsay, which surely is good enough to get you to discovery and get you past the pleading stage, that he was explicitly told that this was the reason. Some people have a long memory for things they want to retaliate for. Others don't. I agree. If there was an unexplained failure to hire and somebody claims, oh, this is in retaliation for something that happened years and years ago, we wouldn't automatically assume that that's a plausible thing. But if somebody says to you, this is why you're not being hired, that's a whole different matter, isn't it? Your Honor, with respect to what's under your scenario, that is an allegation of direct discrimination. And if the allegation is that, oh, you were retaliated against because of something that you did six years prior, that's sort of an argument for a direct example of discrimination as opposed to an indirect. However, in both of those instances, a direct allegation, the problem there is that for direct allegation, it's a legal conclusion that he was retaliated against. And so that particular allegation really falls out under the relevant case law. But it doesn't, and cases cited in our brief still say, regardless of whether you're doing a direct sort of claim or an indirect one, you still have to show that there is a causal component between sort of the occurrence in this case, the withdrawal of the assignment in 2016, and the act that he's claiming caused that withdrawal, which he is saying is an event six years prior. And cases are clear in the circuit that that, the time span, a six-year time span is insufficient to satisfy that causal connection, just as being blackballed a year, maybe a year and a half prior to the 2016 event is also insufficient for that causal connection. And that, the argument is really clear by the case law, and he can't escape. So if you're an employer who believes that revenge is a dish best eaten cold, you can wait to retaliate and explicitly say to somebody, we're not hiring you because you sued us many years ago, but ha ha, time has passed. Well, you know, it could be, depending on the time, it could be a patient's issue. But in this particular case, it is clear that you must establish a causal connection. And the causal connection that he is relying on are incidents that sort of at the outer range of time is six years at the sort of the closest is 1.5 years. And those particular instances are insufficient to satisfy that causal connection. Thank you, Ms. Wilson. We'll hear rebuttal. Thank you, Your Honor. Just quickly, we do acknowledge that the retaliatory claim here under Title VII is much stronger. To the extent that this court believes that there should be further clarification about the Title VII failure to hire claim, we would be happy to replete that claim on remand. If there are no further questions, then we will rely on our submission. So when you say happy to replete, happy to assist your client who was proceeding pro se before? I'm correct, Your Honor. Thank you very much. Thank you both. We will take the matter under advisement. Thank you. Thank you, Your Honor.